15 minutes to be shared by the defendants. Mr. Bostick, you may proceed for the appellant. Good morning, Your Honors. Good morning. May it please the Court, Nick Bostick on behalf of Plaintiffs Jared Rapp and Mody Goldring,   if you don't mind, three minutes for rebuttal. That is fine, and you may proceed. As I was preparing for my oral argument, I wanted to answer the question, why did Judge Yonker so quickly and definitively decide to label my complaint one for malicious prosecution instead of abusive process? Having the gap between the litigation in district court and the briefing and this period of time to oral argument, I was able to step back and look, and I think in Count 174, which is the nuisance complaint against Mr. Stover and the Condominium Association, and Count 178, which is the state law civil rights violation, I was able to step back and look. We did specifically allege that Mr. Stover, on his own and on behalf of the Condominium Association, made false allegations which instigated and caused the prosecution. I think that's where I put my complaint in jeopardy, and I believe that it's prudent, and I will concede on this record, that those two counts do need to be dismissed. They, I think, were going to run into too many arguments and trying to split hairs on the way I wanted to allege those against those private entities, the non-governmental actors. And because I did allege that there were false allegations, I can't explain under our binding precedent, then how does that not attack the judgment? In other words, how does the damage not come from the judgment? So those two need to go, and I agree with that. And I think maybe I have to take some of the blame for not clarifying that and causing the mess at the district court level. But beyond that, I just am at a loss as to the complete recharacterization of the whole complaint. It just is not a malicious prosecution. The prime example is on page 51 of the condominium association brief to this court. Maybe I'm misspeaking. That might have been to the district court. I believe it's this court. They keep saying that we are challenging the fines imposed by the state district court after remand. They don't cite to anything in my brief, and they don't cite to anything in argument anywhere, because it's not true. We cannot challenge the fines assessed by the state district court on remand. This case is pure and simple. The delay tactics, the delay of service, the arbitrary selection of dates, and the accumulation of that completely avoiding the spirit of the ordinance, which is compliance, all to gain tactical advantages in the course of the informal hearing process. What in there is the 1983 federal claim violation of the federal constitution or violation of federal statutes? What is the federal violation here? I want to argue they're under the 14th amendment. Do you have any authority for that effect, that abuse of process is a recognizable 1983 claim? No, we've cited to the cases where this court has said maybe, and in several instances you've looked to the various states for the elements. Why would we look to state law for elements if this is a violation of the federal constitution or federal statutes? I think essentially it's just because the states have developed it through the concept. Why don't we just allow the states to deal with it? Why should we federalize this as a claim? The procedural due process concept of the fourth amendment is designed to achieve fairness, and I think when you get to a situation like this, if you have a violation, it's de minimis. I can see if the state court proceedings were fundamentally unfair, that there may be a 14th amendment due process claim, but that's not what you're alleging. You're alleging that they delayed issuing the citations. Whatever, you just mentioned a few things, and it was kind of their conduct, not the state proceedings. Right, so you're setting that up when you say that fundamentally unfair, you mean the hearings in front of the judge. Yeah, that's a 1983 claim, but I'm just trying to see what your 1983 claim is here. The excessive fines, I think, is an attack on judgment. The fines that were ultimately leveled by the state court judgment. I recognize they were reduced from the original fines that were assessed, but now we've got a level of fines. You claim they're excessive, but you admit you cannot attack the state court judgment because that would be a violation of Rooker-Feldman. So you have to allege that there's somehow excessive fines irrespective of the judgment, but I don't see a claim there either. So I'm just trying to see what is the violation of the federal constitution or violation of federal law here that you have. So far you've just told me, well, there's perhaps precedent somewhere else, but I need something better than that. With all due respect, Your Honor, we are not challenging the $45,000 fine assessment. Okay, so what's excessive about the fines then? It was the $53,000 assessment that was excessive. But that wasn't even levied because the judgment you appealed at had it reduced. Yes. Okay, so how is that even a case in controversy if there was something that was reduced? The behavior of the government actors caused the proceedings to be unfair. It's that behavior. The proceedings were corrected. I'm sorry? The proceedings were corrected by a reduction in the fines. Right, but my clients had to litigate and go through that entire process because the city was attempting to extract what could have been up to $170,000. There's all sorts of claims that are brought, but they're not really looking. Well, and I understand full well, Your Honor, that if you agree with me and send this back to Judge Yonker, we may get to Rule 56 and he may say, well, okay, I think there was a constitutional violation, but I'm looking at Sixth Circuit precedent and you can't tell me this is clearly established in 2009. But what I'm hoping to do with this case, I mean we no longer have to do the sequential analysis under Saussure v. Katz. I can't think of a case that said you can do either factor. Obviously, I'm going to encourage this Court and Judge Yonker to analyze the constitutional violation first, and then we'll talk about whether it's clearly established because my clients are willing to put in the effort to develop the law, if necessary, to stop this. If they can't do it for themselves, then they can do it for the next set of plaintiffs. But that's the gist of what we hope to accomplish, if nothing else. One of the things that we think allow us to go back to the behavior of the government actors is how the proper analysis of the appropriate fines should occur. Now, this case is not in my brief, but it's something that I found as we continued the litigation in the state court. It's United States v. WCI Steel, Inc., and it's at 72 Federal Supplement 2nd, 819, out of the Northern District of Ohio in 1999. It was a hazardous material, EPA enforcement, and that district judge looked at the behavior of the enforcement agency and used that behavior to analyze whether a particular fine imposed was appropriate. And there's a lot of parallels. In that case, it's not binding, obviously, on this court because it's a district court, but it's also not binding because it was directly within the case that imposed the fine. But it demonstrates what I was hoping to accomplish by bringing this case. So if nothing else, I would ask you to look at the concept of the behavior prior to the proceeding that caused the proceeding to be unfair. That's the gist of our abuse of process claim. Do you still have some claims pending in the state court? After Judge Collette reversed the fines, we took those remaining issues, the sufficiency and the procedure claims, to the Court of Appeals. They denied leave. The Michigan Supreme Court denied leave. The U.S. Supreme Court denied certiorari. We got the second set of fines. We appealed that to Judge Collette. He refused to rule, said, I've already ruled on the fines. I'm not going to do it again. We applied for leave to the Court of Appeals. They denied leave on December 10th of last year. Last Thursday, I filed my application for leave to appeal the new fines to the Michigan Supreme Court. But you don't have any other claims related to this case pending in state court? Not in Rapp Goldring. You've noticed in the briefs they were mentioning of Rapp Realty, which is Mr. Rapp's parents. Those all took the same path except to the U.S. Supreme Court. Those are all closed. We got no relief at the state level. Questions? Thank you. Morning, Your Honor. Scott Holmes on behalf of Douglas Stover and the East Lansing City Center Condominium Association. And I'll apologize in advance if I seem a bit nervous. This is my first appellate work at any level ever. And I've already made my first mistake by not checking it. That's okay. You know, I can't imagine any attorney arguing before any court who's not nervous. That's just a natural consequence of oral argument. And certainly when it's your first time, you're even more nervous. So we welcome you, as we do all attorneys today, and look forward to your argument. Are you going to be dividing your time daily? Yes, Your Honor. We are splitting it evenly. Okay. You found the courthouse, and you're here on time. That's right. Thank you, Your Honors. May it please the Court. The appeal in this case asks this Court to accept various interpretations of appellants' claims to overturn the dismissals. No matter what argument, no matter what angle or interpretation the appellants assert in support of their civil conspiracy, their abusive process, and their excessive fines claims, the end result is that they all require a finding that certain citations were invalid and that the manner in which the city appellees enforced the ordinance violated the law. And that's precisely what the state court considered and rejected before this federal lawsuit was ever filed. Each citation was valid, and the city's conduct was lawful. The city's conduct cannot be found unlawful without invalidating the trial court's judgment that it was lawful. And that's exactly why the district court was correct in dismissing the claims under Rooker-Feldman. Now, the source of the injury is key to the determination. The appellants admit in their brief that the source of the injury was the state court's judgment assessing the fines. Now, as Counsel for the Appellants has stated here, there's argument over whether it was the judgment before remand or after remand. But that doesn't change the result either way. The fact remains that the state court's judgment is at the center of their claims, and their alleged injury doesn't exist without it. That's not an independent claim, and that's why the district court was correct in dismissing. It has to be more than just at the center of the claim or in the area. I mean, they have to specifically attack the judgment for Rooker-Feldman to apply, and that's why the doctrine has been applied so few times, isn't it? Yes, Your Honor. You can't cite me very many cases from the Sixth Circuit where we've applied it, can you? That's accurate, Your Honor. No, I cannot. I think I was on a case that I said that Rooker-Feldman has been applied to Rooker-Feldman, but not too much other. Usually because the complaints and the arguments are enough that they allege other things. At least they know the doctrine's there so that they target not the judgment but something around the judgment, I guess. Usually it's not direct, that's all. Yes. In this particular case, though, and I recognize it is a little bit different here where really what the judgment is, is it's fines assessed. I don't know how you have excessive fines if you don't have the judgment. The judgment is what imposes what they claim are excessive fines. The fact that you would have a ticket for fines that could be excessive if they were enforced, I don't think violates the Eighth Amendment or any federal constitution. The fact that you had been charged with something that you're not convicted of or there's no adjudication of it. I think the only way you say it's a violation of the federal constitution against excessive fines is the judgment itself, and the final judgment, not a judgment that was vacated. I absolutely agree with you, Your Honor. I think that claim is out. Then they're left with abuse of process, basically, which I think your counsel admitted there's no federal authority that recognizes a federal constitutional claim for abuse of process. I'll note to the court that the federal district court did dismiss based on that, but on the fact that there is no recognized abuse of process claim in the Sixth Circuit. Also, the district court gave another alternative basis for dismissal of the abuse of process claim specifically. Regardless of whether you want to argue how it's characterized, whether it's a malicious prosecution claim or abuse of process, the district court found that they had not sufficiently pled an abuse of process claim, even if it does exist, because they found that the ulterior purpose that was alleged, which was to pay a settlement or fine which was unwarranted, that's not really a genuine ulterior purpose. So the district court dismissed all 173 abuse of process claims on that basis. So the issue of whether this is a malicious prosecution or abuse of process interpretation doesn't matter, because it was dismissed under either and both. The district court did not get to the issues of race judicata and collateral estoppel, but the appellees would submit that dismissal is warranted in both of those. I noted in my brief that there are citations to the record where the specific conduct that the appellants are alleging here that the city appellees did was litigated through witness examination, through motion practice. The court considered it and denied it. Certainly, as the district court mentioned in its opinion, the appellants could have filed counterclaims or brought their claims in the state court that they're trying to bring now. So these issues have been sufficiently vetted, maybe not as sufficiently as appellants would have liked, but the opportunity certainly was there. And so that's another basis for dismissal. We talked about the excessive fines, Judge Griffin, and I agree with you completely. And if there are no other questions from the court, I won't continue on. Okay. Well, thank you, Mr. Holmes. Thank you. Please come back and argue again. Thank you. Good morning, Your Honors. Karen Daly on behalf of Defendants Irwin, Yeadon, Dutcher, and the City of East Lansing. I don't have anything to add as far as the Rooker-Feldman and that stuff. I'll rely on a co-defendant's argument and the arguments in my brief. The only thing I do want to address, though, is the equal protection claim. Based on the repeal brief, it looks like they're only alleging the class of one theory. However, a class of one theory of equal protection is not applicable in a context where there's discretionary decision-making. And that's the Enquist decision by the U.S. Supreme Court. Plaintiff has argued that that doesn't apply here because it's not public employment context. But that's not what the Supreme Court said in that case. The Supreme Court held that it was not a proper challenge to complain that a subjective, individualized decision was subjective and individualized. That's a categorical rejection of class one challenges to subjective, individualized, discretionary decisions. It's not a rejection particular to the government employee context. The court stated in that opinion right after that, that this principle applies most clearly in the employment context. The court chose their words very carefully there. They didn't say only in the employment context. They said most clearly, which strongly implies that it leaves open the door to apply this in other discretionary decision-making situations. So far, I believe the 7th, 8th, and 10th Circuit have published opinions which have applied it in the context outside of public employment. There's numerous district court decisions. The 6th Circuit has applied it in one unpublished case, and that's 519 Federal Appendix 911. That's Haik versus Guevara. In that case, it was a student athlete who was kicked off the basketball team, and she sued under the class of one theory. And they said that even though it's not in the public employment context, that's a discretionary decision-making situation, and class one theory would not apply. So we would ask that you would apply that here to bar plaintiff's claim. However, even if you find that Enquist does not apply, the equal protection claim was still properly dismissed. Under Twombly, the factual allegations in a complaint must be enough to raise a right above the suspicion level or speculation level. The plaintiff only asserted general speculation about the ulterior purpose. This is not enough to survive equal protection. There's no allegations that they were treated differently than other people who violated the housing ordinance. I think this is basically, as you've heard, they've appealed and appealed and appealed. This is their last-ditch effort. So we would ask that you would affirm on all grounds. Putting aside sort of the Rooker-Feldman debate and whether 1983 would recognize this claim here for abuse of process in federal court, I'm just curious if the record reflects why it took the city so long to issue these additional citations. I understand the record. The city initially issued one citation for each of the plaintiffs, and then many months later issued 75 each or 85 each for, I guess, for every day that there was an alleged violation. And I know that's part of the argument that there's an ulterior motive and irregularity as to the actions of the city, but does the record reflect why the city pursued the matter this way? Well, it's my understanding that they did an investigation. Those allegations were addressed by Judge Ball. The plaintiffs made a post-trial motion based on the manner of investigation, the manner in which notice was provided, and the denial of their right to jury trial. Judge Ball ruled on that. He found that the code enforcement officers acted within the law and that their conduct was proper. Okay. Is it typical? Actually, that was my question. Go ahead. Is it typical of the way the city of East Lansing enforced this ordinance? You know what? I can't answer that. I don't know. I know in this case they did an extensive investigation. I mean, East Lansing is a huge campus. It's one of, what, the top ten campuses in the country as far as student body. They have a lot of these issues. So it's my understanding that they did the investigation and issued the citations properly. Okay. Thank you. Thank you. Mr. Bostic. Thank you, Your Honor. Well, the investigation consisted of two events, a police officer going to a loud party on November 1, 2009, and the code compliance officer, Mr. Dutcher, going back to the premises on January 26, 2010. That's it. That's the investigation. In the meantime, and we submitted some of these in district court, there were significant number of e-mails and correspondence between Mr. Stover, on behalf of himself and the association, and the city code compliance personnel. So that's the investigation. The two dates, tickets, 84 days in between, nothing else, except the communications between the private parties and the government actors. To answer your other question about routine, I hesitate to, I'm not going to argue facts that aren't in the record, but discovery here would be a real eye-opener for this court and the district court. I disagree with my colleagues about the district court would have had jurisdiction over our affirmative claims in the state district court. I'm sorry, the state district court would not have had jurisdiction. They're a court of limited jurisdiction. Money-wise, they don't have equitable jurisdiction. We simply could not have counterclaimed in this particular circumstance under Michigan law. I also disagree with my colleague about our equal protection claim. I'll have to stand on my brief, but my recollection is that the complaint and the briefing in the district court also set that up as a purely arbitrary and capricious approach under the due process clause of the 14th Amendment. So if I'm wrong, I'm wrong, but that's my recollection, is that we had that second theory because of the arbitrary dates, the lack of a real investigation, and the delay. In sum, Your Honors, I understand the state of the law, and we've never failed to acknowledge it in the district court and here, but the behavior of these city officials was such that we need the ability, we being plaintiff's attorneys in 1983 actions, to curb and hold accountable because the conduct occurred pre-hearing, and it set up the whole problem for the outrageous fines that were imposed when you're talking about a completely de minimis violation. So thank you. Why do you need a federal remedy as opposed to a state court remedy? As a former state court judge, what's wrong with Michigan courts resolving disputes like this? When we came back, for example, after remand, we still complained about the fines. Judge Collette simply refused to rule. I, you know, I... No, but then you can appeal as ruling. We did, but then it's... But after the state circuit court from district court, it's by leave, and they said no. So that's... I mean, you know, I'm somewhat sympathetic to your claims here, but my problem is do you really have a right to be here at the federal court? And I fully understand, and we're hoping to develop some law that says in the future we can. All right, thank you. Okay, well, thank you for your arguments today, counsel, all of you. I don't know whether you've had an opportunity to speak with our court mediator, Mr. Calico, his staff, but if you have not, perhaps there would be some benefit for the three of you contacting him to see if these many disputes that you have, state and federal, could somehow be resolved outside of court. That's strictly up to you to pursue. This panel is not suggesting that you do that or requiring that you do it. But you already did it? Yes. Okay. I guess that takes care of that. Okay. Thank you very much. The case will be submitted. Thank you.